IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TINA MARIE PAYNE,<br><br>                Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of the Social Security<br>Administration,<br><br>                Defendant. | CV 16-147-BLG-TJC<br><br><br>**ORDER** |

On September 28, 2016, Plaintiff Tina Marie Payne ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of Plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433.  (Doc. 1.)  The Commissioner filed the Administrative Record ("A.R.") on June 12, 2017.  (Doc. 5.)

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of the Commissioner's denial and remand for an award of

disability benefits.  (Doc. 12.)[1]  The Commissioner submitted a response brief on

November 30, 2017.  (Doc. 17.)  Plaintiff did not file a reply, so the motion is fully

briefed and ready for decision.

For the reasons set forth herein, the Court finds the case should be

**REMANDED** for further administrative proceedings

## I.     PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB benefits in February 2013.  (A.R. 10,

194-200.)  Plaintiff alleges she has been unable to work since October 13, 2012.

(A.R. 194.)  The Social Security Administration denied Plaintiff's application

initially on April 25, 2013, and upon reconsideration on October 25, 2013.  (A.R.

117-121, 133-143.)  On December 24, 2013, Plaintiff filed a written request for a

hearing.  (A.R. 150-151.)  Administrative Law Judge Michele M. Kelley (the

"ALJ") held a hearing on January 8, 2015.  (A.R. 64-116.)  On February 27, 2015,

the ALJ issued a written decision finding Plaintiff not disabled.  (A.R. 40-52.)

Plaintiff requested review of the decision on April 20, 2015.  (A.R. 36.)  The ALJ's

decision became final on July 28, 2016, when the Appeals Council denied

---

[1] Plaintiff's counsel should review the District of Montana Local Rules of
Procedure prior to any future filings, which Local Rules specify, *inter alia*, that
typewritten filings must be in 14-point font.  L.R. 1.5(a)(2).

Plaintiff's request for review.  (A.R. 1-8.)  Thereafter, Plaintiff filed the instant action.

## II.    LEGAL STANDARDS

### A.    Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error."  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance."  *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  *Flaten*, 44 F.3d at 1457.  In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the

ALJ's conclusions.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)).  The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary.").  However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion.  *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

### B.     Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) she suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other

substantial gainful employment which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). A claimant must meet both requirements to be classified as disabled. *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin*., 223 F.3d 968, 974 (9th Cir. 2000)). The five steps are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098, n.3 (citing 20 C.F.R. § 404.1512(d)). At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id*. at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

## III.  FACTUAL BACKGROUND

### A.  The Hearing

A hearing was held before the ALJ on January 8, 2015, in Billings, Montana,[2] and the following testimony was provided.

/ / /

/ / /

---

[2] Plaintiff's Opening Brief states that "plaintiff appeared in Kalispell, Montana for a video hearing presided over by [the ALJ] from Billings, Montana." (Doc. 12 at 1-2.) The hearing transcript makes no reference to Plaintiff appearing via video from Kalispell, and in fact states that Plaintiff "appeared in person" at the hearing. (A.R. 66.) Regardless, the Court does not consider this discrepancy to be material to its review of Plaintiff's claim.

### 1. Plaintiff's Testimony

Plaintiff was employed by Costco for 21 years. (A.R. 107.) She testified that she stopped working on October 13, 2012, due to a gradual worsening of her physical condition. (A.R. 72.) Her symptoms began in 2011 with dizziness and chest pain. (A.R. 72.) She eventually was diagnosed with asbestos-related disease ("ARD") and was put on "Libby Asbestos Medicare." (A.R. 72-73.) At the time of her hearing, Plaintiff testified she was significantly limited in her ability to lift, stand, walk, and perform fine motor tasks; and that she also suffered from impaired respiratory function, sleep disturbance, depression, and difficulty concentrating,

Plaintiff had worked as a "merchant" at Costco, which position she describes as primarily a "stocker." (A.R. 74.) She estimates that she lifted 40-50 pounds for 5 hours per day, and was on her feet for 8 hours or more. (A.R. 73-74.) Eventually she transitioned to "the lightest work that they offered," which was "standing at the door and clicking people in," but she could not perform that work because of pain in her legs. (A.R. 74.) She described numbness in her legs and back pain, which was not alleviated by regular 15-minute breaks. (A.R. 74-75.)

When asked to describe her most serious and limiting physical issue, Plaintiff testified that she "can't lift anything," "all [her] bones ache and [she] can't

stand up for very long" or "sit for very long."  (A.R. 75.)  She added that these issues have worsened in the last year or year and a half.  (A.R. 75.)

Plaintiff testified that she may be able to lift and carry five pounds.  (A.R. 77.)  Weight greater than that causes pain in her shoulders, arms, and fingers, which begins at her neck and radiates downward, causing numbness to her elbow.  (A.R. 77.)  Plaintiff stated that her left arm is worse than her right.  (A.R. 77.)  Her fingers feel like they are asleep.  (A.R. 78.)  Plaintiff's hand pain prevents her from performing fine motor tasks, such as fastening buttons and opening jars.  (A.R. 78-79.)  She estimates that she can use her hands for 15-20 minutes before they are too painful for continued use.  (A.R. 80.)  She could resume use after resting for another 15-20 minutes.  (A.R. 80.)

Plaintiff further testified that she can stand for 15-20 minutes at a time, after which she needs to sit or lie down.  (A.R. 84.)  She estimates that she could stand for 2 hours in an 8-hour day, but in any case no more than 2-3 hours.  (A.R. 84.)  She also testified that her ability to walk is impaired.  She stated that she tried to walk her dog after she quit her job because her doctor advised her to get exercise, but she claims her condition worsened.  (A.R. 85.)

Plaintiff also testified that she suffers from depression.  Plaintiff said she has become more depressed over time "because [she] can't do nothing or do as much

as [she] used to," although she then clarified that "[i]t's not that [she] can't do nothing," she just "can't do what [she] used to be able to do and it's just depressing." (A.R. 75-76.) She testified that not being able to work contributes to her depression. (A.R. 76.)

Regarding her respiratory impairment, Plaintiff explained that it feels like she has an "elephant on [her] chest." (A.R. 81.) Plaintiff was prescribed a CPAP machine to help her breathing, but described the CPAP as "like being held down," which her doctor attributed to possible anxiety. (A.R. 82.) She testified that she only sleeps perhaps three hours per night, and then lays down "two or three if not more" times per day, but does not often fall asleep. (A.R. 82.)

Plaintiff also reported problems focusing. (A.R. 82-83.) She keeps a notebook to write down important things. She used to enjoy household activities such as cooking and baking, but claims she can no longer perform those tasks due to mental and physical disability. (A.R. 83.) When asked specifically what it is about cooking that she finds difficult, Plaintiff answered that she "just [doesn't] have the…ambition to do it, I guess. I don't know. I just don't want to. Don't feel I can." (A.R. 83-84.) She also cannot play cards anymore because she cannot focus. (A.R. 84.)

Plaintiff was asked how many bad days she has in "a given week or month."

(A.R. 85-86.)  She responded that there are 3 or 4 days per week when she does not

go anywhere.  (A.R. 86-87.)  She attributes her lack of desire to leave the house to

depression, explaining that she "just [doesn't] want to deal with people."  (A.R.

86.)

She testified she gets headaches when she takes the medication prescribed to

help her pain.  (A.R. 86.)  She also reported stomach issues with some medication,

such as Gabapentin, which she has discontinued.  (A.R. 86, 88.)

Plaintiff testified that she stopped smoking 12 or 15 years ago, despite some

evidence in the record suggesting that she smoked at times pertinent to her

application.  (A.R. 87.)

The ALJ questioned Plaintiff regarding medical records suggesting she was

capable of significant exercise, such as bicycling two miles per day, and going on

walks up to a mile at a time.  (A.R. 91-92.)  Plaintiff denied participating in that

level of exercise.

### 2.      Michael F. Payne's Testimony

Mr. Payne is Plaintiff's husband.  (A.R. 95.)  He is retired, and he testified

that he and Plaintiff live in a fifth wheel trailer and split time seasonally between

Montana and Arizona.  (A.R. 103, 106.)  They had been married for 21 years at the time of the hearing.  (A.R. 96.)

Mr. Payne testified that he began noticing issues with Plaintiff's health roughly 4 years prior to the hearing.  Plaintiff's health care providers initially attributed the issues to "hormones and that sort of thing," but Plaintiff was not improving "and then she got the diagnosis of the asbestos."  (A.R. 96.)  Eventually, Plaintiff could not participate in recreational activities that she used to enjoy, such as snow skiing and hiking.  (A.R. 96.)

Mr. Payne testified that Plaintiff deteriorated to the point that she could not work "a little over 2 years ago" when she became unable to perform the requirements of her job, such as lifting things and being on her feet.  (A.R. 97.)  Mr. Payne listed other problems Plaintiff has, including not being able to use her hands "hardly at all"; not sleeping well at night; and side effects from medication, including moodiness, being "very just zombie-like," fatigue, and lack of motivation.  (A.R. 97.)  He also testified that Plaintiff has significant sitting limitations, and cannot sit through an entire movie without having to get up and move around.  (A.R. 98.)

With respect to their social life, Mr. Payne testified that Plaintiff used to be very outgoing, but she does not like to leave the house now.  (A.R. 97.)  When

friends stop by their house, Plaintiff has to cut the visits short to lie down.  (A.R. 97-98.)  He said being around a lot of people makes Plaintiff very nervous, and they cannot attend friends' get-togethers for that reason.  (A.R. 98.)

Mr. Payne testified that he had worked at Costco for 21 years prior to his retirement, and that there is a not a job offered at Costco that Plaintiff could perform.  (A.R. 98-99.)  He explains that she does not have the endurance to finish a shift.

Mr. Payne was asked to provide a list of things Plaintiff used to do but now he has to do.  He listed cooking, housework, bills, and outdoor upkeep.  (A.R. 100.)  He explained that Plaintiff attempts to help but is very limited, both physically and mentally.  (A.R. 100-101.)  Mr. Payne estimated that Plaintiff spends 10-12 hours per day in bed, and then also rests on the couch.  (A.R. 101.) He estimated that he is able to convince her to leave the house once per week, but she never goes to the grocery store.  (A.R. 102.)

The ALJ questioned Mr. Payne as to why his testimony is so different from a report he submitted in May 2013, in which he indicated that Plaintiff "went for short walks, visited with friends, tried to keep the trailer clean, cleaned, did laundry, cooked an hour a – did all those things for an hour a day.  Liked to cook breakfast five to seven days a week."  (A.R. 102.)  Mr. Payne explained that

Plaintiff's condition, both physically and mentally, has deteriorated in the time since he wrote the report, and "within the last year she's just gone downhill totally." (A.R. 103-105.)

### 3. Vocational Expert's Testimony

Delane Hall, a Vocational Expert (the "VE"), also testified before the ALJ. (A.R. 107-115.) The VE noted that Plaintiff has performed the following jobs: (1) stocker (specific vocational preparation ("SVP") of 2 and physical demand medium (though heavy as performed by Plaintiff), from 1992 to [2012]. (A.R. 109.)

Next, the ALJ asked the VE three hypothetical questions. First, the ALJ asked the VE to assume an individual with the following characteristics: the same past jobs as Plaintiff; of a similar age; has a similar educational background; can lift and carry, and push and pull 25 pounds frequently and 50 pounds occasionally; can stand and walk 6 hours in an 8-hour day, and sit 6 hours in an 8-hour workday; can frequently climb ramps and stairs, and occasionally climb ladders, ropes, and scaffolds; needs to avoid concentrated exposure to extreme cold, fumes, odors, dust, gases, and poor ventilation; and who can tolerate the atmospheric conditions of an office setting. (A.R. 109-110.) The VE said the individual would be able to

perform Plaintiff's past job of stocker as described by the DOT, but not as performed according to Plaintiff.  (A.R. 110.)

Second, the ALJ asked the VE to assume the same person, but with the additional limitations that the individual can only lift and carry, and push and pull 10 pounds frequently and 20 pounds occasionally, and must avoid concentrated exposure to extreme humidity.  (A.R. 110-111.)  The VE said the individual would not be able to perform Plaintiff's past job of stocker, but could perform other light, unskilled jobs such as office helper, mail clerk, and small parts assembler.  (A.R. 111.)

Third, the ALJ asked the VE to assume an individual with the same past work history as Plaintiff, who is of a similar age, and has a similar educational background, but who would be off-task consistently 20 percent of an eight-hour workday and 40-hour week.  (A.R. 111.)  The VE said there were no jobs in the national economy available for such an individual.  (A.R. 111.)

The VE provided the following additional testimony upon questioning by Plaintiff's counsel.  First, Plaintiff's counsel asked the VE to respond to the first hypothetical with the additional limitation that the individual would be unable to perform repetitive (defined as in excess of half of the workday) gross and fine manipulations.  (A.R. 112.)  The VE responded that the limitation would preclude

the individual from performing the jobs the VE identified.  (A.R. 112.)  Next, the

VE conceded that "a need for recumbency" would preclude the jobs as well.  (A.R.

112.)  The VE also conceded that missing more than one workday per month on a

regular basis would preclude the jobs.  (A.R. 112-113.)

The VE indicated, however, that a lifting restriction of no more than 10

pounds would preclude the identified jobs but may not preclude all work.  (A.R.

113.)  The VE also testified that there may still be jobs, including small parts

assembler, which could be performed by someone who would need to sit 6 hours in

an 8-hour workday.  (A.R. 114-115.)

## B.     Medical Evidence

The administrative record includes Plaintiff's medical records from several

health care providers.  The Court has summarized only those records that are

relevant to the specific issues presented for review.

### 1.     Treating Physician Evidence

#### a.     Owen Austrheim, MD

Dr. Austrheim works at the Center for Asbestos Related Disease ("CARD"),

and he diagnosed Plaintiff with "[a]sbestos-related disease, mainly mild pleural

thickening" on July 10, 2013.  (A.R. 410-411.)  Dr. Austrheim noted Plaintiff's

complaint of chest discomfort, and remarked that it is "possibly from her asbestos-related disease, but other possibilities should be considered." (A.R. 411.)

### b. Abdulkadir Hourani, MD

Dr. Hourani, a sleep medicine specialist, treated Plaintiff for sleep difficulties in December 2013. Dr, Hourani recorded that Plaintiff "underwent diagnostic polysomnogram which revealed severe obstructive sleep apnea/hypopnea with associated arousals and oxygen desaturation." (A.R. 426.) Dr. Hourani recommended that Plaintiff follow up in his clinic "to discuss if the patient needs to [o]btain CPAP titration polysomnogram to determine[] adequate CPAP treatment." (A.R. 442.) He also recommended "[w]eight loss, exercise, and sleep hygiene." (A.R. 442.)

In an undated but presumably later record, Dr. Hourani diagnosed Plaintiff with "[o]bstructive sleep apnea with good response to CPAP titration at a CPAP pressure level of 9 cm of water." He recommended that Plaintiff use the CPAP at that pressure level, and repeated his recommendations of "[w]eight loss, exercise, and sleep hygiene." (A.R. 443.)

//

//

### c.     Malathy Tharumarajah, MD

Dr. Tharumarajah treated Plaintiff twice in July, 2014, and once in October, 2014 at the Billings Clinic.[3] (A.R. 517-533, 560-565.) Plaintiff's symptoms included weakness, fatigue, joint pain, and muscle pain. (A.R. 561.) Dr. Tharumarajah ordered stress ECHO and nuclear profusion tests, the results of which unremarkable. (Doc. 12 at 14; *see also* A.R. 515, 534.)

Dr. Tharumarajah, in conjunction with Dr. Kale, submitted a medical opinion statement on October 13, 2014. (A.R. 558-559.) The statement contains the following germane opinions: diagnoses of asbestos exposure, obstructive sleep apnea, and depression; Plaintiff can walk on a flat surface without a cane for 20 minutes; Plaintiff can stand on a flat, hard surface without leaning for support for 20 minutes and "cannot stand for prolonged time"; Plaintiff can stand and walk on a flat surface for a total of 4 hours in an 8-hour day; "breathlessness and leg pain" are the limiting conditions with respect to Plaintiff's ability to stand and walk; Plaintiff can sit for 1 hour at a time, and 3 hours total in an 8-hour day; Plaintiff's feet need to be elevated every hour; Plaintiff can lift and carry 2 pounds frequently; Plaintiff does not experience substantial difficulty with fine manipulation, but does

---

[3] Records indicate that Dr. Tharumarajah was a resident at the time of Plaintiff's appointments. (*See e.g.* A.R. 560.) She was supervised by attending physicians Dr. Kari Kale (A.R. 560) and Dr. Charles Wittnam (A.R. 517).

experience weakness in her hands and arms, and is precluded from repetitive use of her hands; Plaintiff is limited to "very short times" with respect to fine manipulation; Plaintiff is limited in gross manipulation; Plaintiff would need to lie down during an 8-hour workday, but not on an unscheduled basis; Plaintiff would be reliable and consistent over the course of a 5-day week; if Plaintiff returned to work, she would be expected to suffer from "increased dust/allergy or physical exertion as breathing may become laboured"; Plaintiff would not be off-task at least 11% of a workday, as "patient has anxiety & depression but she is able to focus"; and Plaintiff would be expected to miss an average of 1 scheduled workday per month due to "asbestos exposure related breathing problems." (A.R. 558.)

### d.     Wissam Fayad, MD

Dr Fayad is a primary care provider who saw and examined Plaintiff on five occasions prior to the ALJ's decision (November 10, 2014; November 11, 2014; December 15, 2014; January 20, 2015; and February 25, 2015), and twice after the decision (April 27, 2015, and July 14, 2015). (A.R. 593.) Dr. Fayad submitted two medical opinion statements. The first was submitted December 15, 2014. (A.R. 568.) Dr. Fayad's statement contains the following germane opinions:

diagnoses of depression, shoulder pain, and arthritis[4]; Plaintiff can walk on a flat

surface without a cane[5]; Plaintiff cannot stand on a flat, hard surface without

leaning for support, before resting; Plaintiff cannot stand and walk on a flat surface

total in an 8-hour day; "severe back pain & leg pain" are the limiting conditions

with respect to Plaintiff's ability to stand and walk; Plaintiff can sit for 30 minutes

at a time, but cannot sit for a full 8-hour day; Plaintiff's feet need to be elevated

from time to time; Plaintiff can lift and carry 5 pounds frequently; Plaintiff has

substantial difficulty with fine manipulation, weakness in her hands and arms, and

is precluded from repetitive use of her hands; Plaintiff is limited with respect to

fine manipulation; Plaintiff is limited in gross manipulation; Plaintiff would need

to lie down during an 8-hour workday, but not on an unscheduled basis; Plaintiff

would struggle with consistency at work due to weakness and fatigue; Plaintiff

cannot work due to leg pain, back pain, and depression; Plaintiff would be off-task

at least 11% of a workday, and is unable to concentrate and has depression; and

Plaintiff would be expected to miss an "unknown" number of scheduled workdays

---

[4] "Shoulder pain" and "arthritis" are the Court's best interpretation of these entries, as "depression" is the only clearly legible diagnosis. (A.R. 568.)

[5] Dr. Fayad responded with "yes" or "no" to items on the survey that appear to be requesting durations. (A.R. 568.) His later statement does provide durations. (A.R. 17.)

per month due to leg pain, back pain, depression, fatigue, weakness and focus. (A.R. 568.)

Dr. Fayad submitted his second opinion on March 28, 2016, more than a year after the ALJ issued her decision in this case. (A.R. 17.) Nevertheless, the opinion statement reflects that Plaintiff had been a patient of Dr. Fayad since April 2014, and the majority of his treatment of Plaintiff occurred prior to the ALJ's decision. The opinion statement is included in the A.R., but there is no indication whether the Appeals Council looked at or considered Dr. Fayad's opinion.[6]

Dr. Fayad's second statement contains the following germane opinions: no diagnoses; Plaintiff can walk on a flat surface without a cane for 30 minutes; Plaintiff can stand on a flat, hard surface without leaning for support for 15 minutes before resting; Plaintiff can stand and walk on a flat surface for 2 hours total in an 8-hour day; "fibromyalgia and bursitis" are the limiting conditions with respect to Plaintiff's ability to stand and walk; Plaintiff can sit for 30 minutes at a time and 2 hours total in an 8-hour day; Plaintiff's feet need to be elevated from time to time; Plaintiff can lift and carry 5 pounds frequently; Plaintiff has substantial difficulty with fine manipulation, weakness in her hands and arms, and

---

[6] Dr. Fayad's records are listed by the Appeals Council as additional evidence it had received and included in the A.R. (A.R. 593-614), but it did not also list Dr. Fayad's opinion statement. (A.R. 6.)

is precluded from repetitive use of her hands; Plaintiff is also limited in gross manipulation; Plaintiff would need to lie down during an 8-hour workday, but not on an unscheduled basis; Plaintiff would struggle with consistency at work, and would be expected to experience "fibromyalgia flare ups if standing for long periods or sitting"; Plaintiff would be off-task at least 11% of a workday, and is unable to concentrate and has depression; and Plaintiff would be expected to miss an unspecified number of scheduled workdays per month due to fibromyalgia, bursitis of lower extremities, and depression. (A.R. 17.)

### e.    Michael Keller, MD

Dr. Keller is a rheumatologist who examined Plaintiff on consultation from Dr. Fayad on February 11, 2015. Plaintiff was also seen on follow-up by a physician's assistant in Dr. Keller's office on April 22, 2015. (A.R. 570.) Dr. Keller's assessment included fibromyalgia, bilateral shoulder pain, trochanteric bursitis, sleep disturbance and depression and anxiety. (A.R. 572-3.) Dr. Keller's medical records were submitted to the Appeals Council following the ALJ decision, and were made a part of the record. (A.R. 6, 570-580.)

Dr. Keller also submitted an undated medical opinion statement that Plaintiff represents she received on July 22, 2016, more than a year after the ALJ's decision. (Doc. 12 at 11; A.R. 28.) Again, however, the opinion statement reflects

that Plaintiff had been a patient of Dr. Keller prior to the ALJ's decision, and

therefore relates to Plaintiff's condition prior the ALJ's decision. This opinion

statement was also provided to the Appeals Council and is included in the

administrative record, although there is no indication whether the Appeals Council

looked at or considered Dr. Keller's opinions.[7]

Dr. Keller's statement contains the following germane opinions: diagnoses

of fibromyalgia, depression, shoulder pain, and trochanteric bursitis; Plaintiff can

walk on a flat surface without a cane for "20 min depending on day"; Plaintiff can

stand on a flat, hard surface without leaning for support for less than 10 minutes;

Plaintiff can stand and walk on a flat surface for a total of 2 hours in an 8-hour day;

"pain and stiffness" are the limiting conditions with respect to Plaintiff's ability to

stand and walk; Plaintiff can sit for 30 minutes at a time, and 3 hours total in an 8-

hour day; Plaintiff's feet need to be elevated from time to time; Plaintiff can lift

and carry 5 pounds frequently; Plaintiff has substantial difficulty with fine

manipulation, weakness in her hands and arms, and is precluded from repetitive

use of her hands; Plaintiff is limited to "short periods" with respect to fine

manipulation; Plaintiff is limited in gross manipulation; Plaintiff would not need to

---

[7] The Appeals Council listed Dr. Keller's medical records as additional evidence
received and made a part of the administrative record (A.R. 570-580), but it did
not also list Dr. Keller's opinion statement. (A.R. 6.)

lie down during an 8-hour workday; Plaintiff would struggle with consistency at work due to fatigue, dizziness, nausea and vision[8]; if Plaintiff returned to work, she would be expected to suffer from "short-term memory loss when in emotional estate [sic]"; Plaintiff would be off-task at least 11% of a workday; and Plaintiff would be expected to miss an average of 50% of scheduled workdays per month. (A.R. 28.)

**f. Len Sarff, PhD**

Dr. Sarff is a licensed clinical psychologist[9] who treated Plaintiff in psychotherapy on three occasions from March 6, 2014, through April 28, 2014. (A.R. 483-488.) Dr. Sarff diagnosed Plaintiff with "Generalized Anxiety Disorder"; "Major Depressive Disorder, Single Episode, Mild"; and "Chronic Obstructive Pulmonary Disease" at Plaintiff's initial appointment. (A.R. 487.) Those diagnoses remained after Plaintiff's second appointment on April 4, 2014, but Dr. Sarff noted that Plaintiff "is continuing to improve" and that he would "continue current treatment plan." (A.R. 485.) On her final visit on April 28,

---

[8] This is the Court's best interpretation of this entry, as this line is not clearly legible. (A.R. 28.)

[9] Though Plaintiff refers to Dr. Sarff as her "psychiatrist" (Doc. 12 at 3), there is no indication in the record that Dr. Sarff holds himself out to be a psychiatrist or has the requisite medical degree.

2014, it was noted that she continued with symptoms of depression and anxiety. (A.R. 483.)

Dr. Sarff submitted a medical opinion statement on March 28, 2016, more than a year after the ALJ issued her decision in this case, which was also provided to the Appeals Council. (A.R. 11.) This medical opinion relates to Dr. Sharff's evaluation of the Plaintiff prior to the ALJ's decision. The opinion statement is included as part of the A.R., but again there is no indication whether the Appeals Council looked at or considered the statement. (A.R. 6.)

Dr. Sarff's statement contains the following germane opinions: diagnoses of fibromyalgia, [generalized anxiety disorder], and depression; Plaintiff can walk on a flat surface without a cane for "20-30 min depending on the day"; Plaintiff can stand on a flat, hard surface without leaning for support for 10-15 minutes; Plaintiff can stand and walk on a flat surface for a total of 1-2 hours in an 8-hour day; "pain" is the limiting condition with respect to Plaintiff's ability to stand and walk; Plaintiff can sit for 20-30 minutes at a time, and 2-3 hours total in an 8-hour day; Plaintiff's feet need to be elevated from time to time; Plaintiff can lift and carry 5 pounds frequently; Plaintiff has substantial difficulty with fine manipulation, weakness in her hands and arms, and is precluded from repetitive use of her hands; Plaintiff is limited to "very short times" with respect to fine

manipulation; Plaintiff is limited in gross manipulation; Plaintiff would not need to lie down during an 8-hour workday; Plaintiff would struggle with consistency at work due to fatigue and possible vision problems; if Plaintiff returned to work, she would be expected to suffer from fatigue and short-term memory loss; Plaintiff would be off-task at least 11% of a workday; and Plaintiff would be expected to miss an average of 50-60% of scheduled workdays per month due to fibromyalgia and short-term memory.  (A.R. 11.)

### 2.    Non-Examining Physician Evidence

#### a.    David Jordan, MD

Dr. Jordan, an M.D. with unknown specialization, reviewed Plaintiff's medical records, but did not examine her, and did not testify at the hearing.  He issued an opinion on August 12, 2013.  (A.R. 123-132.)  Dr. Jordan opined that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently. (A.R. 128.)  Dr. Jordan found Plaintiff can stand or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour work day.  (A.R. 128.)  Dr. Jordan also stated Plaintiff can perform unlimited pushing/pulling, except as limited for lift and/or carry; unlimited balancing, stooping, kneeling, crouching, and crawling; can frequently climb ramps/stairs; and can occasionally climb ladders/ropes/scaffolds. (A.R. 129.)  He noted that Plaintiff should avoid concentrated exposure to extreme

cold, and should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. (A.R. 129-130.) He ultimately concluded that Plaintiff is not disabled. (A.R. 131.)

### b.    Tim Schofield, M.D.

Dr. Schofield, an M.D. with unknown specialization, reviewed Plaintiff's records at the reconsideration phase, and altered the findings of Dr. Jordan. (A.R. 134-143.) Dr. Schofield opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. (A.R. 139.) Dr. Schofield found Plaintiff can stand or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour work day. (A.R. 139.) Dr. Schofield also stated Plaintiff can perform unlimited pushing/pulling, except as limited for lift and/or carry; unlimited balancing, stooping, kneeling, crouching, crawling, and climbing ramps/stairs; and can occasionally climb ladders/ropes/scaffolds. (A.R. 139-140.) He noted that Plaintiff should avoid even moderate exposure to extreme cold and fumes, odors, dusts, gases, and poor ventilation. (A.R. 140.) He ultimately concluded that Plaintiff is not disabled. (A.R. 142.)

### C.    The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering Plaintiff's claim. First, the ALJ found that Plaintiff had not engaged in substantial

gainful activity since the alleged onset date of October 13, 2012.  (A.R. 42.)

Second, the ALJ found that Plaintiff had the following severe impairments:

"asbestos-related lung disease."  (A.R. 42.)  The ALJ also found that Plaintiff had

the following non-severe impairments: "obstructive sleep apnea, myalgias, a major

depressive disorder, and an anxiety disorder."  (A.R. 42-44.)  Third, the ALJ found

that Plaintiff did not have an impairment or combination of impairments that meet

or medically equal any one of the impairments in the Listing of Impairments.

(A.R. 44-45.)  Fourth, the ALJ essentially adopted the conclusions of non-

examining physician Dr. Jordan in establishing the following residual functional

capacity ("RFC"):

> perform medium work as defined in 20 CFR 404.1567(c) and
> 416.967(b); she is able to lift and carry 50 pounds occasionally and 25
> pounds frequently, push and pull 50 pounds occasionally and 25 pounds
> frequently, stand/walk for 6 hours in an 8-hour day, frequently climb
> ramps/stairs, and occasionally climb ladders, ropes, and scaffolds, but
> she is unable to work with concentrated exposure to extreme cold, dust,
> gases, fumes, and poor ventilation.

(A.R. 45-51.)

The ALJ next found that Plaintiff was able to perform the past relevant work

of stocker.  (A.R. 51.)  Thus, the ALJ found that Plaintiff is not disabled.  (A.R.

51.)

//

## IV. DISCUSSION

After careful consideration of the record and applicable law, the Court finds that remand is required in this case so that the ALJ can consider new evidence not available to her at the time she made her decision.

As explained above, Drs. Sarff, Keller, and Fayad completed medical opinion statements after the ALJ rendered her decision on February 27, 2015, but before the Appeals Council rendered its decision on July 28, 2016. These opinions are all included in the A.R. (*see* A.R. 11, 17, 28), but they are not included among the additional evidence that the Appeals Council considered at the review stage. (*See* A.R. 6-7.) The Appeals Council notes in its decision letter to Plaintiff that it "considered…the additional evidence listed on the enclosed Order of Appeals Council." (A.R. 2) The doctors' opinions are not listed on the Appeal Council's order, and the Appeals Council does not explain why it chose to consider the new evidence listed on the order but not the doctors' opinions. Indeed, the Appeals Council does not mention the opinions at all. Although there is no evidence in the record as to when the Appeals Council actually received the opinions,[10] the

---

[10] For example, the Court notes Plaintiff's phrasing in her brief that Dr. Keller "forwarded his medical source opinion to plaintiff's counsel" on July 22, 2016, six days before the Appeals Council rendered its decision. Plaintiff does not indicate when she, in turn, forwarded the opinion to the Appeals Council.

Commissioner neither argues in her response brief that the Appeals Council did not receive the opinions in time to consider them, nor presents any other reasonable basis for the Appeals Council to have excluded the opinions from its review.

In short, the Court is presented with the following circumstances: three of Plaintiff's treating physicians provided opinion evidence after the ALJ rendered her decision; the opinions all relate in large part to Plaintiff's condition prior to the ALJ's decision; each opinion statement declares Plaintiff to be significantly more limited than the ALJ found Plaintiff to be; each opinion is included in the A.R.; and the Court has no evidence or argument to explain, much less justify, why the Appeals Council did not consider the opinions. Under these circumstances, and informed by review of the authority discussed below, the Court has no alternative but to remand this case to the ALJ to consider the new evidence.

The Commissioner's regulations provide that "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R § 404.970(b) (2016). S*ee Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 n.3 (9th Cir. 2012). The Ninth Circuit has interpreted this regulation to include medical evaluations made after the date of the ALJ's decision where they concern the claimant's condition during the time period

before the ALJ's decision. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011) (finding that "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.") (quoting *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996)).

It is uncontroverted that the doctors' opinions are "new" evidence. The Court finds that they are also "material." Evidence is material for purposes of § 404.970(b) if there is a "reasonable possibility that it would have changed the outcome of the ALJ's determination." *See Alvarado v. Astrue*, 2008 WL 2266309, *4 (C.D. Cal. May 30, 2008) (citation omitted). Here, Drs. Sarff, Keller, and Fayad, all treating physicians, issued opinions that find Plaintiff to be substantially more limited, in nearly every respect, than the ALJ determined in her RFC. Had the ALJ considered these opinions, there is a reasonable possibility she might have given this new evidence greater weight than the opinions of the non-examining physicians on whom she relied in determining Plaintiff's RFC.

In addition, the opinions relate to the period of time on or before the date of the ALJ's decision. Although the opinions are dated after the ALJ's decision, each opinion provides a treatment period date that is within the relevant time period, and the opinions also are accompanied by medical records from within the relevant time period. *See Taylor*, 659 F.3d at 1232; *Crawford v. Colvin*, 2016 WL

1237342, *7 (C.D. Cal. Mar. 28, 2016) (finding that post-decision medical opinions "'relate to' the time period considered by the ALJ because they report on the same conditions plaintiff claimed as the bases of her disability and that the ALJ found to be severe impairments"). Plaintiff has therefore established the requisite temporal relevance under § 404.970(b).

It is clear from *Brewes* "that when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Id*. at 1163. Here, Plaintiff submitted new evidence which the Appeals Council did not "consider," but the Appeals Council failed to explain why it did not consider the evidence, or even provide information to suggest that it "looked at" the evidence at all. *See Ruth v. Berryhill*, 2017 WL 4855400, *8-9 (D. Or. Oct. 26, 2017) (discussing the difference between the Appeals Council "looking at" new evidence as opposed to "considering" it). The fact that the Appeals Council did not remark upon the doctors' opinions in any respect brings this case squarely within the ambit of *Taylor*.

In *Taylor*, the plaintiff submitted to the Appeals Council a psychiatric evaluation and medical source statement, which were not considered by the ALJ.

*Taylor*, 659 F.3d at 1231.  Both pieces of evidence were dated after the relevant time period, but the content therein related to the relevant period.  *Id.*  Thus, they contained relevant medical information.  Yet the Appeals Council did not consider the evidence, either because it was misplaced or because it erroneously concluded that the evidence pertained to a later time period.  *Id.* at 1232-33.  The Ninth Circuit found that since the assessments concerned the plaintiff's limitations during the relevant period, they should have been considered by the Appeals Council.  *Id.* at 1233.  It ultimately remanded the case, holding that "where the Appeals Council was required to consider additional evidence, but failed to do so, remand to the ALJ is appropriate so that the ALJ can reconsider its decision in light of the additional evidence."  *Id.* (citing 20 C.F.R. § 404.970(b)).

As the U.S. District Court in Oregon explained in distinguishing *Taylor* from a case before it, "in *Taylor*, it was the Appeals Council's total failure to acknowledge the new evidence in accordance with the relevant regulations – *i.e.*, neglecting to either *look at* or *consider* the new evidence – that made remanding appropriate so that the ALJ could reconsider its decision in light of the additional evidence."  *Ruth*, 2017 WL 4855400 at *10 (emphasis in original) (quotations omitted).  This case falls squarely within that analysis.

As explained above, the doctors' new opinions appear in the A.R., but they are not included among the new evidence the Appeals Council considered. The Appeals Council did not remark upon the opinions one way or another, so it is impossible for the Court to determine whether the Appeals Council's decision to not consider the opinions was proper – or if the Appeals Council even made such a decision at all. As in *Taylor*, it is the Appeal Council's "total failure to acknowledge the new evidence in accordance with the relevant regulations – *i.e.*, neglecting to either *look at* or *consider* the new evidence – that [makes] remanding appropriate so that the ALJ could reconsider its decision in light of the additional evidence." *Id.*

The Commissioner maintains, however, that remand for consideration of additional evidence is subject to "sentence six" of 42 U.S.C. § 405(g), which requires a showing of "good cause for the failure to incorporate [the] evidence into the record in a prior proceeding." But the Ninth Circuit did not require such a showing in *Taylor*, nor have several district courts that have remanded to the ALJ under *Taylor*'s authority. *See Powell v. Colvin*, 2016 WL 706199 *5 (D. Or. Feb. 22, 2016) (collecting cases).[11]

---

[11] Section 404.970 was amended in December 2016 after the Appeals Council's denial of review here to also include a good cause requirement. *See* 20 C.F.R. § 303.970(b).

Because the Court finds that, under *Taylor*, remand is appropriate for the ALJ to consider how the new opinion evidence from Drs. Sarff, Keller, and Fayad could affect each step of the sequential analysis, including any relevant credibility findings, the Court need not address Plaintiff's allegations of error concerning the severity of her impairments or the ALJ's finding regarding Plaintiff's credibility. *See Taylor*, 659 F.3d at 1235 ("Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated."); *see also Ward v. Colvin*, 2014 WL 4925274, *4 n.3 (E.D. Cal. Sept. 30, 2014). ("As the matter must be remanded for further consideration [under *Taylor*], the court declines to address plaintiff's remaining arguments.").

## V.  REMAND OR REVERSAL

Plaintiff asks the Court to remand this case for further proceedings.  "[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court."  *Reddick v. Chater*, 157 F.3d at 728. If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting

*Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)).  "If additional

proceedings can remedy defects in the original administrative proceedings, a social

security case should be remanded.  Where, however, a rehearing would simply

delay receipt of benefits, reversal [and an award of benefits] is appropriate."  *Lewin*

*v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds remand for further proceedings is appropriate.  On remand,

the ALJ shall consider the new opinions submitted by Drs. Sarff, Keller, and

Fayad, and reevaluate her decision as necessary.

## VI.  CONCLUSION

Based on the foregoing findings, IT IS ORDERED that the Commissioner's

decision is **REVERSED** and this matter is **REMANDED** for further proceedings

consistent with this opinion.

DATED this 11th day of June, 2018.

TIMOTHY J. CAVAN
United States Magistrate Judge